# EXHIBIT 1

Amended & Restated

Software License and Hardware Purchase Agreement

between

Bully Dog Technologies, LLC

and

H&S Performance, LLC

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| SECTION 1. | DEFINITIONS | 1 |
| SECTION 2. | LICENSE | 3 |
| 2.1 | Grant | 3 |
| 2.2 | Limited Sublicense Rights | 3 |
| 2.3 | Restrictions | 3 |
| 2.4 | Hardware Requirement | 3 |
| 2.5 | Ownership | 3 |
| SECTION 3. | MAINTENANCE AND SUPPORT | 3 |
| SECTION 4. | DOCUMENTATION | 3 |
| SECTION 5. | HARDWARE PURCHASE AND SALE | 4 |
| 5.1 | Exclusivity Requirement | 4 |
| 5.2 | Forecast | 4 |
| 5.3 | Payment Terms | 4 |
| 5.4 | Taxes | 4 |
| SECTION 6. | TERM AND TERMINATION | 4 |
| 6.1 | Term of License | 4 |
| 6.2 | Breach | 4 |
| 6.3 | Effect of Termination | 4 |
| 6.4 | Survival | 5 |
| SECTION 7. | INJUNCTIVE RELIEF | 5 |
| SECTION 8. | CONFIDENTIALITY | 5 |
| 8.1 | Definition | 5 |
| 8.2 | No Disclosure of Use of Confidential Information | 5 |
| 8.3 | Exceptions | 5 |
| 8.4 | Return of Materials | 6 |
| SECTION 9. | WARRANTIES; LIMITATION OF LIABILITY | 6 |
| 9.1 | Warranty by Bully Dog | 6 |
| 9.2 | No Consequential Damages; Limitation of Liability | 6 |
| 9.3 | Additional Limitations | 6 |
| SECTION 10. | INDEMNIFICATION | 7 |
| 10.1 | Mitigation of Damages | 7 |
| 10.2 | Indemnity by H&S | 7 |
| 10.3 | Indemnification Procedures | 7 |
| SECTION 11. | MISCELLANEOUS | 8 |
| 11.1 | Representation of H&S | 8 |
| 11.2 | Notices | 8 |
| 11.3 | No Third-Party Beneficiaries; Exception | 8 |

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 11.4 | Nonwaiver | 9 |
| 11.5 | Assignment | 9 |
| 11.6 | Severability | 9 |
| 11.7 | Court Venue; Jurisdiction and Arbitration | 10 |
| 11.8 | Attorneys Fees | 10 |
| 11.9 | Applicable Law | 10 |
| 11.10 | Entire Agreement | 10 |

# AMENDED AND RESTATED
# SOFTWARE LICENSE AND HARDWARE PURCHASE AGREEMENT

THIS AMENDED AND RESTATED SOFTWARE LICENSE AND HARDWARE PURCHASE AGREEMENT (this *"Agreement"*) is made as of the _1st_ day of January, 2012 (the *"Effective Date"*), by and between Bully Dog Technologies, LLC, an Idaho limited liability company (*"Bully Dog"*), and H&S Performance, LLC, a _____ limited liability company (*"H&S"*).

## RECITALS

A.  Bully Dog is a leader in the diesel performance automotive aftermarket industry, and has the capabilities to develop certain software to allow users to access electronic control units and download software programs onto them.

B.  In 2008, H&S and Bully Dog entered in a Software License Agreement whereby Bully Dog developed and H&S licensed such software from Bully Dog to assist H&S in downloading their proprietary software programs onto electronic control units. H&S also retained Bully Dog to provide maintenance and support systems for such software.

C.  H&S and Bully Dog now desire to amend and restate such agreement on the terms and conditions provided herein.

NOW THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties agree as follows:

## AGREEMENT

**Section 1.** **Definitions**

Whenever used in this Agreement, the following terms will have the following specified meanings:

*"Affiliate"* means, with respect to any Party, any Person that, directly or indirectly (e.g., through any number of successive tiers), controls (e.g., a parent organization), is controlled by (e.g., a subsidiary organization), or is under common control with (e.g., a brother/sister organization) such Party.

*"Bully Dog Indemnitees"* has the meaning set forth in Section 10.2.

*"Change of Control Event"* has the meaning set forth in Section 11.5.

*"Confidential Information"* has the meaning set forth in Section 8.1.

*"Damages"* has the meaning set forth in Section 10.2.

*"Discloser"* has the meaning set forth in Section 8.2.

*"Documentation"* means all documents and materials supplied by Bully Dog to H&S to aid in the use and operation of the Software, and all modifications to such documents or materials that are made by or on behalf of Bully Dog from time to time, which may include: (i) functional, technical, design and performance specifications, (ii) installation, configuration, administration, operation and maintenance procedures and instructions, and (iii) training guides and user manuals.

*"Hardware"* means the hardware used in connection with the H&S Software. All IPR related to the Hardware (other than H&S software) is owned by Bully Dog.

*"Hardware Shortfall"* means the difference between the Minimum Hardware Order and the Hardware pieces purchased by H&S in the applicable month.

*"H&S Software"* means any computer program that H&S Makes or licenses that uses, or whose use is enabled by, the Software, and is for download by consumers onto electronic control units.

*"IPR"* means any patent, copyright, trademark, trade secret or other intellectual property right.

*"License"* means the license granted by Bully Dog to H&S under Section 2.1 with respect to the Software.

*"License Term"* means the term of the License as set forth in Section 6.1.

*"Make"* (or such conjugation thereof as the context may require) means to author, create, write, prepare, develop, originate or otherwise make (or such conjugation thereof as the context may require).

*"Party"* means Bully Dog, H&S, or any Person that acquires all of the right, title and interest of Bully Dog or H&S in this Agreement in accordance with Section 11.5.

*"Person"* means any individual, corporation, limited liability company, partnership, trust, estate, association, governmental authority or other entity.

*"Purpose"* means the Making and selling of H&S Software by H&S for lawful purposes in accordance with the terms and conditions of this Agreement.

*"Recipient"* has the meaning set forth in Section 8.2.

*"Software"* means the current version of the software that accompanies the Hardware giving access to a vehicle's computer for uploading and downloading.

*"Third Party"* means any Person other than a Party.

*"Unauthorized Use"* means any unauthorized possession, use, reproduction, copying, marketing, publication, distribution, disclosure or other dealing.

**Section 2.   License**

**2.1**   Grant.  Subject to the terms and conditions of this Agreement, Bully Dog hereby grants to H&S a nonexclusive, nontransferable, nonassignable license, with limited sublicense rights as described in Section 2.2 below, during the License Term to (a) install, execute, copy, and otherwise use the Software solely for the Purpose, (b) make reasonable copies of the Software solely for backup and archival purposes, (c) use the Documentation as reasonably required by H&S in connection with H&S's use of the Software, and (d) make a reasonable number of copies of the Documentation for such purpose.  As consideration for the License, H&S paid Bully Dog Two Hundred Fifty Thousand Dollars ($250,000) (*"License Fee"*).

**2.2**   Limited Sublicense Rights.  Bully Dog grants H&S the limited right to sublicense the Software, as installed on Hardware purchased hereunder *only*, to end-users of the H&S Software solely to the extent required to use the H&S Software on the end-user's vehicle.

**2.3**   Restrictions.  H&S acknowledges that the scope of the license granted under this Agreement is limited.  H&S agrees that it will not, and will not allow any Third Party to, use the Software except as specifically permitted in this Agreement.  Without limiting the foregoing, H&S agrees that it will not (a) sell, lease, rent, lend, assign, sublicense (except as provided in Section 2.2) or otherwise transfer all or any part of the Software, (b) decompile, disassemble, reverse engineer or otherwise attempt to discover any source code or underlying trade secrets to the Software, (c) remove, obscure or alter any copyright notice, restricted rights legend or other notice of proprietary rights that appears or is contained on or in the Software, or (d) customize or modify the Software.  H&S will not use the Software, or allow the transfer, transmission, export, or re-export of any Software or portion thereof in violation of any export control laws or regulations administered by the U.S. Commerce Department, OFAC, the U.S. Environmental Protection Agency, or any other government agency.

**2.4**   Hardware Requirement.  The Parties agree that all H&S Software will be installed on or otherwise used in conjunction with Hardware.

**2.5**   Ownership.  Bully Dog retains all right, title and interest in and to all originals and copies of the Software and Documentation, including all associated IPR.  H&S will have no rights in the Software or Documentation other than the rights expressly granted to H&S in Section 2.1 of this Agreement.  H&S hereby assigns to Bully Dog any additional rights it may acquire in the Software or Documentation.

**Section 3.   Maintenance and Support**

During the License Term, Bully Dog will continue to provide customary maintenance and support services for the Software in the ordinary course similar to what they have been doing since the inception of this Agreement.

**Section 4.   Documentation**

Bully Dog has delivered to H&S at least one (1) electronic copy of all Documentation for the Software.  H&S acknowledges that the Documentation is sufficient to enable H&S's personnel to use and to understand the use and operation of the Software.  Throughout the term

of any maintenance service agreement, Bully Dog will provide copies of any revisions, improvements, enhancements, modifications and updates to the Documentation, at no additional cost. H&S may make a reasonable number of copies of the Documentation for H&S's use consistent with the terms of this Agreement, provided H&S reproduces copyright notices and any other legends of ownership on each copy.

**Section 5. Hardware Purchase and Sale**

**5.1** Exclusivity Requirement. H&S agrees that it will purchase directly from, and use Bully Dog as, its exclusive supplier of Hardware during the License Term. In the event that Bully Dog is unable to supply the Hardware to H&S for any reason, then Bully Dog will designate a replacement company in its sole discretion.

**5.2** Forecast. Each month, H&S will submit to Bully Dog a written forecast of the quantity of Hardware pieces that H&S expects to order during each of the next six (6) months.

**5.3** Payment Terms. Any and all payments due under this Agreement shall be made by cash, certified check, wire transfer or other immediately available funds upon delivery of any Software or services hereunder. A late charge will apply to any amounts where payment is not received by Bully Dog within the time periods specified in this Agreement. The late charge will be calculated at a rate of one and one-half percent (1.5%) of the unpaid amount per month (18% per annum) and will be due and payable upon invoice by Bully Dog.

**5.4** Taxes. The fees set forth in this Section 5 do not include any taxes now or hereinafter enacted, or any other amounts payable to governmental authorities. In the event that Bully Dog is required to pay any tax or duty under this Agreement (other than taxes on its net income), H&S will reimburse Bully Dog therefor.

**Section 6. Term and Termination**

**6.1** Term of License. H&S's right to use the Software will begin upon the delivery of the Software by Bully Dog, and will continue until termination in accordance with this Section 6.

**6.2** Breach. Either Party may terminate the License Term upon thirty (30) days prior written notice if the other Party materially breaches a material term of this Agreement and does not cure such breach within thirty (30) days following receipt of notice specifying the breach (in which case the License Term will terminate at the end of such period); provided, however, that Bully Dog may terminate the License Term in a shorter period of time if Bully Dog determines that such action is reasonably necessary to avoid liability, and that Bully Dog may terminate the License Term immediately if H&S breaches Section 2, Section 5.1, Section 8, Section 10, Section 11.1 or 11.5.

**6.3** Effect of Termination. Upon termination of the License Term for any reason, all license rights under this Agreement will terminate, and H&S will (a) immediately cease using the Software and the Documentation, (b) remove all copies of the Software from its computer(s) and/or server(s), and (c) deliver to Bully Dog a certificate executed by an officer of H&S certifying that it no longer has any copies of the Software or Documentation in its possession or control. H&S's rights under this Agreement automatically terminate upon termination of the

License Term. Bully Dog will have the right to audit the computer systems and files of H&S to ensure compliance with this Section.

**6.4** Survival. The rights and obligations contained in Section 2.3, Section 2.5, Section 2.5, Section 7, Section 8, Section 9, Section 10, and Section 11 will survive any expiration or termination of the License Term for any reason.

**Section 7.** **Injunctive Relief**

H&S acknowledges and agrees that due to the unique nature of Bully Dog's Confidential Information and IPR, there can be no adequate remedy at law for any breach of its obligations hereunder, that any such breach may allow H&S or Third Parties to unfairly compete with Bully Dog resulting in irreparable harm to Bully Dog, and therefore, that upon any such breach or threat thereof, Bully Dog shall be entitled to injunctions and other appropriate equitable relief in addition to whatever remedies it may have at law.

**Section 8.** **Confidentiality**

**8.1** Definition. "*Confidential Information*" means all discoveries, developments, designs, improvements, inventions, concepts, works of authorship, derivative works, blueprints, products, structures, software, processes, computer programs, know how, data, techniques, systems, formulas, marketing and business plans and outlines, strategies, budgets, forecasts, projections, financial statements, costs, fee schedules, client and supplier lists, client and prospective client databases, access codes and similar security information and procedures, techniques, methodologies and performance strategies, and all patents, copyrights, maskworks, trade secrets and other proprietary rights thereto.

**8.2** No Disclosure of Use of Confidential Information. Each Party ("*Recipient*") agrees to retain in confidence any Confidential Information provided to it by the other Party ("*Discloser*") and shall not disclose any Confidential Information to any other entity or person or use, disseminate, or otherwise distribute any Confidential Information for its own benefit or for the benefit of another, except for the limited purpose performing its obligations under this Agreement. Recipient shall take all reasonable safeguards to prevent disclosure of the Confidential Information and shall disclose the Confidential Information to its employees on a "need to know" basis only. Recipient shall inform all its employees who have access to the Confidential Information that such Confidential Information is confidential and proprietary to Discloser.

**8.3** Exceptions. The obligations of Recipient in the preceding paragraphs of this Section 8 shall not apply to Confidential Information that: (a) is publicly known at the time of its disclosure; (b) after disclosure, has become publicly known other than through breach of this Agreement; (c) Recipient can show by tangible evidence was known to Recipient prior to disclosure by Discloser; (d) Recipient can show by tangible evidence was developed independently by Recipient without reference to the Confidential Information disclosed by Discloser; or (e) is required to be disclosed by the Recipient by law, regulation, court order or other legal process; provided, however, that in such event Recipient shall legally resist disclosing

the Confidential Information and shall notify Discloser of such disclosure in writing not less than thirty (30) days in advance of any disclosure or planned disclosure.

**8.4** Return of Materials. Recipient promptly will return all tangible material embodying or derived from Confidential Information of the Discloser (in any form and including, without limitation, all summaries, copies and excerpts of such Confidential Information) upon the earlier of (a) the completion or termination of this Agreement or (b) the Discloser's written request.

**Section 9.** **Warranties; Limitation of Liability**

**9.1** Warranty by Bully Dog. EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NO AFFIRMATION OF FACT, INCLUDING BUT NOT LIMITED TO STATEMENTS REGARDING SUITABILITY FOR USE OR PERFORMANCE OF THE SOFTWARE OR ANY OTHER LICENSED PROGRAMS WILL BE OR BE DEEMED TO BE A WARRANTY OF BULLY DOG FOR ANY PURPOSE. H&S's sole and exclusive remedy in the event of a defect is expressly limited to the restoration of the Software to good working condition.

**9.2** No Consequential Damages; Limitation of Liability. IN NO EVENT WILL BULLY DOG BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS, ARISING OUT OF ANY UNAUTHORIZED USE OF THE SOFTWARE OR ANY BREACH OF THIS AGREEMENT. BULLY DOG WILL NOT BE LIABLE FOR ANY LOSS OR DAMAGE IN CONNECTION WITH OR ARISING OUT OF THE INTERRUPTION OR LOSS OF USE OF THE SOFTWARE OR ANY OTHER LICENSED PROGRAMS OR SERVICES PROVIDED BY BULLY DOG. BULLY DOG'S TOTAL LIABILITY OVER THE TERM OF THIS AGREEMENT FOR ALL LOSSES ARISING HEREUNDER, IN TORT, CONTRACT OR OTHERWISE, WILL NOT EXCEED THE LICENSE FEE. ANY UNAUTHORIZED USE, MODIFICATION, ALTERATION, OR REVISION OF ALL OR ANY PORTION OF THE SOFTWARE OR ANY OTHER LICENSED PROGRAMS OR SERVICES WHICH ARE THE SUBJECT OF THIS AGREEMENT WILL CAUSE ANY WARRANTY DESCRIBED IN THIS AGREEMENT TO BE NULL AND VOID AND H&S WILL BE RESPONSIBLE FOR ANY AND ALL COSTS ASSOCIATED WITH THE REPAIR OF THE SOFTWARE. BULLY DOG, ITS AFFILIATES, SUBSIDIARIES, REPRESENTATIVES, AND AGENTS MAKE NO OTHER WARRANTY, EXPRESS OR IMPLIED, ORAL OR WRITTEN, IN FACT, BY OPERATION OF LAW OR OTHERWISE, EXCEPT AS SET FORTH IN THIS AGREEMENT.

**9.3** Additional Limitations. Notwithstanding anything else in this Agreement, Bully Dog will not be liable for: (a) misuse, abuse, accidental damage, improper handling, or improper maintenance by anyone other than Bully Dog technicians or others acting under Bully Dog control, or any cause other than ordinary use; (b) damages to the operating system, data files, etc. due to causes external to the equipment, including, but not limited to, power surges, power reductions or failure, defective electrical work, fire, flood, water, wind, lightning or any other

natural phenomena; (c) failure of any Hardware or any other equipment provided by Third Parties; or (d) operator inefficiency or error.

**Section 10.** **Indemnification**

**10.1** Mitigation of Damages. If the Software becomes, or (in Bully Dog's opinion) is likely to become, the subject of any such Third Party claim, then Bully Dog (at its sole cost and expense) may either: (a) procure for the H&S Indemnitee the right to continue using the Software as contemplated hereunder; (b) modify the Software to render it non-infringing (provided such modification does not materially degrade the functionality of the Software; or (c) replace the Software with equally suitable, functionally equivalent, compatible, non-infringing Software. If none of the foregoing are commercially practicable despite Bully Dog using all reasonable efforts, then Bully Dog will be entitled to terminate this Agreement as to all or part of this Software.

**10.2** Indemnity by H&S. H&S agrees to defend, indemnify and hold Bully Dog and its Affiliates and their officers, directors, managers, employees and representatives (collectively, the "***Bully Dog Indemnitees***") harmless from and against any and all losses, claims, liabilities, costs and expenses (including taxes, fees, fines, penalties, interest, reasonable expenses of investigation and attorneys' fees and disbursements) as incurred (collectively, "***Damages***"), in connection with any claims against the Bully Dog Indemnitees in any way arising out of or related to: (a) H&S's use of the Software or Documentation, including claims based on Unauthorized Use by H&S or actions or omissions of H&S; (b) H&S's negligence or intentional acts, (c) the H&S Software, or (d) any breach of this Agreement. In addition, H&S agrees to indemnify and hold the Bully Dog Indemnitees harmless from and against all losses, damages and expenses, including reasonable attorneys' fees, in connection with any claims brought by its customers against Bully Dog.

**10.3** Indemnification Procedures. If a Bully Dog Indemnitee seeks indemnification under this Agreement, the Bully Dog Indemnitee will: (a) give prompt notice to the indemnifying party concerning the existence of the indemnifiable event; (b) grant authority to the indemnifying party to defend or settle any related action or claim; and, (c) provide, at the indemnifying party expense, such information, cooperation and assistance to the indemnifying party as may be reasonably necessary for the indemnifying party to defend or settle the claim or action. A Bully Dog Indemnitee's failure to give prompt notice will not constitute a waiver of the Bully Dog Indemnitee's right to indemnification and will affect the indemnifying party's indemnification obligations only to the extent that the indemnifying party's rights are prejudiced by such failure or delay. Notwithstanding anything to the contrary set forth herein, (y) a Bully Dog Indemnitee may participate, at its own expense, in any defense and settlement directly or through counsel of its choice, and (z) the indemnifying party will not enter into any settlement agreement on terms that would diminish the rights provided to the Bully Dog Indemnitee or increase the obligations assumed by the Bully Dog Indemnitee under this Agreement, without the prior written consent of the Bully Dog Indemnitee. If the indemnifying party elects not to defend any claim as is required under this Agreement, the Bully Dog Indemnitee will have the right to defend or settle the claim as it may deem appropriate, at the cost and expense of the indemnifying party, and the indemnifying party will promptly reimburse the Indemnitee for all costs, expenses, settlement amounts and other Damages.

## Section 11. Miscellaneous

**11.1** Representation of H&S. In addition to and without any limitation to the restrictions set forth in Section 2.3 or elsewhere herein, H&S represents and warrants that it will not engage in any Unauthorized Use of, and it will only use the Software, in compliance with all federal, state, local, municipal, international, and multinational or other constitution, law, ordinance, principle of common law, code, regulation, rule, statute or orders or judgments of courts or arbitrators that are or were applicable to the use of the Software.

**11.2** Notices. Any notice, request, instruction or other document to be given hereunder by a Party to the other Party hereto will be in writing, delivered in person, or mailed by certified or registered mail, return receipt requested, or transmitted by facsimile transmission with electronic confirmation of receipt to the addressee's address or facsimile number set forth below (or such other address or facsimile number as the party changing its address specifies in a notice to the other parties):

| | |
|---|---|
| If to Bully Dog: | Bully Dog Technologies, LLC<br>2839 Highway 39<br>American Falls, Idaho 83211<br>Attention: Daryl Klassen, COO<br>Telephone: (208) 226-2500<br>Facsimile: (208) 266-2511 |
| With a copy to: | Perkins Coie, LLP<br>1111 W. Jefferson Street, Suite 500<br>Boise, Idaho 83702<br>Attention: Melanie Rubocki, Esq.<br>Telephone: (208) 343-3434<br>Facsimile: (208) 343-3232 |
| If to H&S: | H&S Performance, LLC<br>_____<br>Attention: _____<br>Telephone: _____<br>Facsimile: _____ |

Notices will be deemed to have been given on the date of service, if served personally on the Party to whom notice is to be given, or on the first day after transmission by facsimile transmission, if transmitted by facsimile as set forth above, or on the fifth day after mailing, if mailed as set forth above.

**11.3** No Third-Party Beneficiaries; Exception. This Agreement is for the benefit of, and will be enforceable by, the Parties only. This Agreement is not intended to confer any right or benefit on any Third Party (including, but not limited to, any employee of any Party). No

action may be commenced or prosecuted against a Party by any Third Party claiming as a third-party beneficiary of this Agreement or any of the transactions contemplated by this Agreement.

**11.4** <u>Nonwaiver</u>. The failure of either Party to insist upon or enforce strict performance by the other of any of the provisions of this Agreement, or to exercise any right or remedy under this Agreement, will not be interpreted or construed as a waiver or relinquishment to any extent of that Party's right to assert or rely upon any such provisions, rights or remedies in that or any other instance; rather, the same will be and remain in full force and effect.

**11.5** <u>Assignment</u>. Neither this Agreement nor any of the rights granted herein shall be assignable or transferable by H&S whether voluntarily or involuntarily (by operation of law or otherwise) without the prior written consent of Bully Dog. A change in control of H&S, including, without limitation, a Change of Control Event shall be deemed an assignment hereunder. Nothing in this Agreement shall prohibit Bully Dog from assigning its rights and benefits hereunder, or from transferring this Agreement, in whole or in part. Bully Dog shall provide written notification to H&S of any assignment or transfer of this Agreement not later than the effective date of such assignment or transfer. Subject to the provisions hereof, this Agreement shall be binding upon and inure to the benefit of the parties, their affiliates, successors, heirs, legal representatives and authorized assigns. For purposes of this Agreement, "*Change of Control Event*" shall mean (a) substantially all of the assets of a party are to be sold, (b) a party is to merge or consolidate with or into any other entity and persons who are equity holders of the party prior to such merger or consolidation do not receive, as a result of such merger or consolidation, more than fifty percent (50%) of the voting equity in the surviving entity; or (c) a third person or group of persons, excluding an existing equity owner of the party of more than 20% of the votes that may be cast for the election of directors, becomes the beneficial owner of equity of the party having more than fifty percent (50%) of the total number of votes that may be cast for the election of directors of the party, or is otherwise able to appoint, designate or control, by proxy, agreement or otherwise, the majority of the directors of the party.

**11.6** <u>Severability</u>. This Agreement will be enforced to the fullest extent permitted by applicable law. If for any reason any provision of this Agreement is held to be invalid or unenforceable to any extent, then:

(a) such provision will be interpreted, construed or reformed to the extent reasonably required to render the same valid, enforceable and consistent with the original intent underlying such provision;

(b) such provision will be void to the extent it is held to be invalid or unenforceable;

(c) such provision will remain in effect to the extent that it is not invalid or unenforceable; and

(d) such invalidity or unenforceability will not affect any other provision of this Agreement or any other agreement between the parties.

If the invalidity or unenforceability is due to the unreasonableness of the scope or duration of the provision, then the provision will remain effective for such scope and duration as may be determined to be reasonable.

**11.7** Court Venue; Jurisdiction and Arbitration.

(a) Neither Party will commence or prosecute any suit, proceeding or claim to enforce the provisions of this Agreement, to recover damages for breach of or default under this Agreement, or otherwise arising under or by reason of this Agreement, other than in the state or federal courts located in Power County, State of Idaho.

(b) Each Party hereby irrevocably consents to the jurisdiction of such courts with venue laid in Power County, State of Idaho.

(c) Notwithstanding the above, in the event of any controversy or dispute arising out of this Agreement, Bully Dog (at its sole and absolute option) may commence an arbitration proceeding by serving written notice thereof to H&S, designating the issue(s) to be arbitrated. Such notice may but need not also specify the desired process for conducting such arbitration and H&S hereby consents to the use of a non-AAA arbitrator and accordingly waives any right it may have to object in the future. Arbitration proceedings shall be conducted in accordance with the Commercial Arbitration Rules of the AAA in effect on the date the notice was served, other than as specifically modified herein. The selection of the AAA's Commercial Arbitration Rules shall not preclude use of a non-AAA arbitrator if Bully Dog so elects. Judgment upon the award rendered by the arbitrator(s) shall be final and binding upon the parties and may be entered in any court having jurisdiction thereof.

**11.8** Attorneys Fees. In any action, suit or other proceeding to enforce any right or remedy under this Agreement or to interpret any provision of this Agreement, the prevailing Party will be entitled to recover its costs and expenses (including, without limitation, attorneys' fees) reasonably incurred in connection with such proceeding, or any appeal thereof.

**11.9** Applicable Law. THIS AGREEMENT WILL BE INTERPRETED, CONSTRUED AND ENFORCED IN ALL RESPECTS IN ACCORDANCE WITH THE LAWS OF THE STATE OF IDAHO, U.S.A., WITHOUT REFERENCE TO ITS RULES RELATING TO CHOICE OF LAW, EXCEPT TO THE EXTENT PREEMPTED BY THE LAWS OF THE UNITED STATES OF AMERICA WHICH WILL THEN APPLY.

**11.10** Entire Agreement. This Agreement constitutes the entire agreement, and supersedes any and all prior agreements, between the Parties with regard to the subject matter. No amendment, modification or waiver of any provision of this Agreement will be valid unless set forth in a written instrument signed by the Party to be bound thereby.

*[Remainder of page intentionally blank.]*

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the date first set forth above.

**H&S:**

H&S Performance, LLC

By: _____
Title: Manager

**Bully Dog:**

Bully Dog Technologies, LLC,
an Idaho limited liability company

By: _____
Title: COO