# EXHIBIT 2

# CONFIDENTIAL INFORMATION, NONCOMPETITION AND

# INVENTION ASSIGNMENT AGREEMENT

As a condition of my employment with Bully Dog Technologies, LLC., an Idaho Limited Liability Corporation, its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following:

1. **Nature of Employment.**

    (a) **At-Will Employment.** I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR MYSELF, WITH OR WITHOUT NOTICE.

    (b) **Employment Duties** – I shall perform all the duties that are hereafter assigned to me by the Company. This position and the duties associated therewith may be modified or changed by the Company in its sole discretion. I will carry out my duties under the general supervision of the Company. The Company shall have the right to change from time to time the nature and scope of my duties, my title (if any) and the place where such duties shall be performed.

    (c) **Best Efforts and Full Devotion of Employee** – I will faithfully at all times, and to the best of my ability, experience and talents, perform all of the duties that are required of me under this Agreement including devoting my full business time to and for the exclusive benefit of the Company and keeping free from conflicting enterprises any other activities which would be detrimental to or interfere with the business of the Company or the devotion of my full business time to the Company. I further agree to use my best efforts to comply with any and all instructions from the Company that the Company may give me from time to time to promote and maintain the success, quality, professionalism and reputation of the Company, including but not limited to policies and procedures defined in the Company employee policy guide. I acknowledge that the Company employee policy guide sets forth various policies, practices and procedures of the Company, that such policy guide may be changed from time to time unilaterally by the Company, and that neither such policy guide nor any of the policies, practices or procedures contained in such policy guide constitute a part of this Agreement or constitute a separate contract between the Company and me relating to my employment by the Company.

2. **Confidential Information; Trade Secret Information.**

    (a) **Company Information.** I agree at all times during my employment with the Company and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, any of the Company's Confidential Information and Trade Secret Information (both as defined below) or to disclose to any person, firm or corporation without written

authorization of the Company's CEO, any Confidential Information of the Company. I understand that "Confidential Information" means any proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, methodologies, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment that relates to the Company's business. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved. I understand "Trade Secret Information" means information, including any document, recording (by means of any storage medium), information, data, list, instrument, that (i) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain secrecy. For purposes of this Agreement, "Trade Secret Information" includes both information disclosed to me by the Company and information developed by me in the course of my employment with the Company. The types and categories of the information which the Company considers to be its Trade Secret Information include, without limitation: (a) information concerning the Company's management, financial condition, financial operations, purchasing activities, sales activities, marketing activities and business plans; (b) information acquired or compiled by the Company concerning actual or potential customers, including the identity of such customers and potential customers, customer lists and the like; (c) information concerning the Company's business dealings with its customers; (d) agreements with representatives or potential representatives of The Company; (e) information acquired or compiled by the Company concerning actual or potential sources of supply, including the identity of suppliers and potential suppliers, supplier lists and the like; (f) business arrangements of the Company of any kind whatsoever, including but not limited to costs, prices, and earnings; and (g) all other types and categories or information (in whatever form) with respect to which, under all the circumstances, I know or have reason to know that the Company intends or expects secrecy to be maintained and as to which The Company has made reasonable efforts to maintain its secrecy.

(b) **Third Party Information.** I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

(c) **Requests for Clarification.** In the event I am uncertain as to the meaning of any provision of this Agreement or its application to any particular information, item or activity, I will inquire in writing to the CEO of The Company specifying any areas of uncertainty. The Company will respond in writing within a reasonable time and will endeavor to

clarify any areas of uncertainty, including such things as whether it considers particular information to be its Trade Secret Information or whether it considers any particular activity or employment to be in violation of this Agreement, and will explain any provisions of this Agreement.

3. **Inventions**.

(a) **Ownership and Assignment of Inventions.** Any Bully Dog or Competitive product, process, technique, creation, or invention that is created by me or improved upon by me while employed at the Company shall become the property of the Company, and I hereby assign all right, title, and interest to the same to the Company. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, discoveries, processes, computer programs, know-how, ideas, methodologies, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as "Inventions"). I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such Invention. I shall not incorporate any Invention, original work of authorship, development, concept, discovery, process, computer program, know-how, ideas, methodology, improvement or trade secret owned, in whole or in part, by any third party into any Invention without the Company's prior written permission.

(b) **Inventions Assigned to the United States.** I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(c) **Maintenance of Records.** I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(d) **Patent and Copyright Registrations.** I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply

for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(e) **No License.** The terms of this Agreement shall not grant me any license or similar right with respect to any patent, copyright or other property of the Company.

4. **Conflicting Obligations**. I represent and warrant to the Company that I have not entered into any agreements and am not subject to any duties to third parties that are inconsistent with the terms of this Agreement. I agree that, during my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during my employment, nor will I enter into any agreements or commitments or engage in any other activities that conflict with my obligations to the Company. I will report immediately any circumstances or situations arising in the future that might involve me or appear to involve me in a conflict of interest. This includes the reporting of any gifts, entertainment, or other personal favors given to or received from anyone with whom The Company has or is likely to have any business dealings which go beyond common courtesies usually associated with accepted business practices.

5. **Returning Company Documents**. I agree that, at the time of leaving the employ of the Company, or at such earlier time as the Company may request, I will deliver to the Company (and will not keep in my possession, re-create, or deliver to anyone else) any and all devices, records, data, notes, reports, methodologies, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors, or assigns. Should my employment with the Company be terminated (for any reason), I shall neither use nor disclose the Trade Secret Information or Confidential Information referred to above except only upon written authorization from the Company, and I shall not take with me any data or information in any form (including documents or copies thereof, notebooks or the like, or optical, electromagnetic or machine readable media, including but not limited to computer diskettes, jump drives and the like) embodying any Trade Secret Information and/or Confidential Information. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit A. I also agree that I will not destroy or erase any data or information in any form (including documents or copies thereof, notebooks or the like, or optical electromagnetic or machine readable media) located in or stored in the

Company' computers or files located on the Company' premises, nor will I transfer by electronic mail means or otherwise to myself or any third party located away from the Company' premises any data or information stored or recorded in the Company' computers, magnetic or optical media or files.

6. **Notification of New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7. **Covenant Not to Compete and Non-Solicitation of Company's Customers**.

(a) I agree that during the course of my employment and for (twenty four) 24 months following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I will not, without the prior written consent of the Company, (i) serve as a partner, employee, consultant, officer, director, manager, agent, associate, investor (provided, however, that nothing herein will prevent me from being the passive owner of not more than 5% of the outstanding stock of any class of a corporation which is engaged in a competitive business of the Company and which is publicly traded); or (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of; or (iii) build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise affiliate myself with any business, in competition with or otherwise similar to the Company's business (provided, however, that nothing herein will prevent me from being the passive owner of not more than 5% of the outstanding stock of any class of a corporation which is engaged in a competitive business of the Company and which is publicly traded). I agree I will not perform the same or similar services that I have performed for Bully Dog Technologies for the following companies Edge Products; Super Chips, Inc; Hypertech, Inc; Banks Power; BD Power; TS Performance; TST Products, Inc; TTS, Inc; Diablo Sport; Dr. Performance Diesel Technologies; Pittsburg Power; Granatelli; PPE; Advance Flow Engineering, Inc; Quadzilla; PDQ; RBP Diesel Performance; Diesel Dynamics; Blue Chip Diesel Performance, Inc; NX; Volant Cool Air Intakes; ATS; DynoJet (Power Commander); Dobeck Performance; Boondockers; S&B Filters; K&N; Airraid; H&S Performance; Alien Tech; Vengence Performance; PDI; Spartan; Schied Diesel; SCT (Super Chips Tuning); Veizu Technologies; Injen or Smarty. The foregoing covenant shall cover my activities in every part of North America.

(b) I acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to disclose nor to use the Company's Confidential Information other than for the Company's exclusive benefit and my obligation not to compete contained in subsection (a) above, is necessary to protect the Company's Confidential Information and, consequently, to preserve the value and goodwill of the Company. I further acknowledge the time, geographic, and scope limitations of my obligations under subsection (a) above are reasonable, especially in light of the Company's desire to protect its Confidential Information, and that I will not be precluded from gainful employment if I am obligated not to compete with the Company during the period and within the Territory as described above.

(c) If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. Alternatively, the undersigned and the Company authorize such Court to eliminate the non-enforceable parts of this Agreement, if any, and re-write them to the maximum extent allowed by law and in accordance with the Court's understanding of the Parties' intent. In the event the provisions of subsection (a) are deemed to exceed the time, geographic, or scope limitations permitted by Idaho law, then such provisions shall be reformed to the maximum time, geographic, or scope limitations, as the case may be, then permitted by such law.

(d) In addition to the foregoing, I agree that I will never solicit any of the customers of the Company that existed at the time of termination of my employment, including, without limitation, past customers who were not conducting regular business with the Company at the time of termination. I understand this covenant and promise not to solicit Company's customers precludes and disallows me from attempting to obtain Company's customers as my own, whether directly or through an agent, affiliate, representative, or other entity, even if all other parameters of the non-competition covenant contained herein are satisfied by the operation of my business and/or by my future employment.

8. **Representations**. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

9. **Survival of Employee's Obligations**. To the extent allowed by law, I expressly understand and agree that all of the obligations established by this Agreement with respect to Inventions, Confidential Information, Trade Secret Information, restrictions on competitive employment, and trade secrets, whether patentable or not, shall continue beyond the termination of any services for or on behalf of the Company.

10. **Jury Trial Waiver and Equitable Relief**.

| | |
|---|---|
| (a) <u>JURY TRIAL WAIVER</u>. THE EMPLOYER AND THE EMPLOYEE EACH HEREBY IRREVOCABLY WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY AND ALL ACTIONS OR PROCEEDINGS BROUGHT WITH RESPECT TO ANY PROVISION OF THIS AGREEMENT OR THE ENFORCEABILITY THEREOF AND/ORWITH RESPECT TO ANY CLAIMS ARISING OUT OF, OR RELATED TO, THE EMPLOYOEE'S EMPLOYMENT WITH THE EMPLOYER, PROTECTION OF THE CONFIDENTIAL INFORMATION DESCRIBED HEREIN, AND THE TERMINATION OF EMPLOYMENT. | TW<br>Initial |
| (b) <u>Equitable Remedies</u>. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2 through 7 herein. Accordingly, I agree that if I breach any of such Sections, the | TW<br>Initial |

Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance, with or without notice from the Court or other body issuing the injunction.

11. **General Provisions**.

(a) **Governing Law; Consent to Personal Jurisdiction**. This Agreement, including all Exhibits attached hereto, will be governed by the internal substantive laws, but not the choice of law rules, of the State of Idaho. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Idaho for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

(b) **Entire Agreement**. This Agreement, including all exhibits attached hereto, set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by both the Company and myself. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c) **Severability**. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d) **Successors and Assigns**. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e) **Unconditional Obligations**. The obligations of the parties under this Agreement are unconditional and do not depend upon the performance of any agreements, duties, obligations, or terms outside the Agreement. The Company may, in its sole discretion, assign this Agreement or its rights hereunder to any parent, affiliate, shareholder, or successor of The Company, or to any person or entity which purchases substantially all of the assets of The Company. I may not transfer or assign this Agreement or any of my rights or obligations under this Agreement.

12. **I acknowledge and agree to each of the following items:**

(a) I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else; and

(b) I have carefully read this Agreement. I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand them; and

(c) I sought the advice of an attorney of my choice if I wanted to before signing this Agreement.

AGREED UPON AND EXECUTED on this 21 day of Febuary, 2017,

**EMPLOYEE:**

Tom Wood
Name (printed)

Tom Wood
Employee's Signature

**BULLY DOG TECHNOLOGIES, LLC.,**
an Idaho Limited Liability Corporation

By: _____
Its: _____